UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————————X

ZIBIZ CORPORATION,

       Plaintiff,

    -against-

FCN TECHNOLOGY SOLUTIONS,

       Defendant.

**OPINION & ORDER
CV-10-1575 (SJF)(WDW)**

————————————————————————X

FEUERSTEIN, J.

On April 8, 2010, plaintiff Zibiz Corporation ("plaintiff") filed a complaint against defendant FCN Technology Solutions, ("defendant") pursuant to this Court's diversity jurisdiction, 28 U.S.C. § 1332, alleging claims for breach of contract, tortious interference with business opportunity/contract and misappropriation of trade secrets. Defendant now moves pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss the complaint for lack of personal jurisdiction. For the reasons set forth herein, defendant's motion is granted.

I.    Background

    A.    Factual Background

Plaintiff is a Delaware corporation with its principal place of business in Ronkonkoma, New York. (Complaint [Compl.], ¶ 2, Exs. B and C). Defendant is a Maryland corporation with its principal place of business in Rockland, Maryland. (Affidavit of Dennis G. Sullivan [Sullivan Aff.], ¶ 3).

Both parties are engaged in the business of providing information technology (IT) services and provide such IT services to federal governmental agencies. (Compl., ¶¶ 5-7). However, defendant is a "prime" SEWP (Solutions for Enterprise-Wide Procurement) contract holder, i.e., it is one of thirty-eight (38) "pre-competed" contract holders listed on the SEWP website through which government agencies can obtain IT products and product-based solutions, whereas plaintiff is not. (Compl., ¶¶ 8-15, 19). Plaintiff is, however, a "Sole-Source 8(a) Set Aside Contract Holder" ("8(a) contract holder"), i.e., a minority-owned company, whereas defendant is not. (Compl., ¶¶ 16-18). According to plaintiff, 8(a) contract holders, of which there are only five (5), have a special advantage in acquiring government contracts because some contracts are only awarded to 8(a) contract holders. (Compl., ¶¶ 17-18).

In October 2008, plaintiff became aware of a government contract to provide IT services for an Air Force project known as "Hybrid APC" (Hybrid Processing Capability). (Compl., ¶ 24). From November 2008 through April 2009, three (3) of plaintiff's full-time employees provided a series of on-site demonstrations of its IT product solution of disaster recovery for Pacific Air Force (PACAF) at Hickam Air Force Base in Hawaii in order to procure the Hybrid APC contract. (Compl., ¶¶ 25-26, 29). Specifically, plaintiff demonstrated its process known as "One-Click COOP (Continuity of Operations)," pursuant to which information stored at one site could be instantly transferred to another site at the click of a button in case of an emergency. (Compl., ¶¶ 27-28). According to plaintiff, its employees spent over fifty-three (53) work days in Hawaii and one hundred sixty (160) work days researching, preparing and developing their demonstration, and kept in constant communication, and compiled and exchanged "massive amounts of documentation," with PACAF during the six (6) month period it sought to procure

2

the Hybrid APC contract. (Compl., ¶¶ 30-34). Plaintiff estimates that its costs associated with providing the demonstrations to PACAF totaled approximately four hundred fifty thousand dollars ($450,000.00). (Compl., ¶ 35).

Plaintiff alleges that at the close of its demonstrations, PACAF personnel told its employees that it was the only company to successfully demonstrate that its custom configuration and technology would meet the requirements of the Hybrid APC project. (Compl., ¶ 36). Plaintiff quoted PACAF a total contract cost of twenty million dollars ($20,000,000.00). (Compl., ¶ 37). According to plaintiff, it had designed the project to be performed in four (4) phases, the first of which it referred to as "Phase I PACAF Virtualization," which had a contract value of approximately five million dollars ($5,000,000.00). (Compl., ¶¶ 38-39). Plaintiff alleges that PACAF authorities informed it that in order to secure a bid for the Hybrid APC project, it should team up with one of the thirty-eight (38) SEWP contract holders. (Compl., ¶ 40).

Plaintiff alleges that in May 2009, its officers met with defendant's representatives at a trade show, at which time its officers informed defendant's representatives that plaintiff had recently performed a series of demonstrations for PACAF in contemplation of procuring the Hybrid APC contract. (Compl., ¶¶ 41-42). According to plaintiff, both parties' representatives "spoke at length and in detail" about the Hybrid APC contract "and the prospect of working together for the mutual benefit of obtaining the Hybrid APC project contract." (Compl., ¶ 43). Plaintiff alleges that following a series of e-mail and telephone discussions, the parties agreed to team up to provide a bid for the Phase I PACAF Virtualization project contract. (Compl., ¶ 44).

Thereafter, the parties entered into two (2) agreements: a "Mutual Non-Disclosure/Non-

Solicitation Agreement" (the "Non-Disclosure Agreement") and a Partnership on a Specific Opportunity Agreement (the "Partnership Agreement"). (Compl., ¶ 45; Exs. B and C). The stated purpose of the Non-Disclosure Agreement, entered into on May 12, 2009, was that "[t]he parties wish to explore a business opportunity of mutual interest and in connection with this opportunity, each party may disclose to the other certain confidential technical and business information which the disclosing party desires the receiving party to treat as confidential." (Compl., Ex. B).

The Partnership Agreement, entered into on May 19, 2009, also provides that each party "will keep all information relating to [the Phase I PACAF Virtualization Project] in confidence and only use the information for the benefit of th[e] partnership." (Compl., Ex. C). In addition, the Partnership Agreement provides, *inter alia*: (1) that "[defendant] agrees to provide [to plaintiff] the final outcome of the deal and the total amount of the award as well as the length of term within 30 days of the award;" (2) that "[defendant] has identified that it is currently not working on or is involved with [the Phase I PACAF Virtualization Project] and desires to work with [plaintiff] on [the Phase I PACAF Virtualization Project];" and (3) that "[defendant] agrees not to sell, directly or indirectly through another entity, into th[e] [Phase I PACAF Virtualization Project]." (Compl., Ex. C). Plaintiff alleges that pursuant to the Partnership Agreement, defendant would submit a bid for the Phase I PACAF Virtualization project contract and outsource the project performance to plaintiff for a fee equal to one and a half percent (1.5%) of the gross contract amount. (Compl., ¶¶ 57-58).

According to plaintiff, after entering into the two (2) agreements, it provided defendant "with volumes of confidential, proprietary information over the course of two months so that

4

[defendant] could submit bids for the Hybrid APC project contracts * * *." (Compl., ¶¶ 46-49, 61). In addition, plaintiff alleges that it relied entirely upon defendant to submit the bid for the Phase I PACAF Virtualization project contract. (Compl., ¶ 60).

Plaintiff alleges that on June 14, 2009, PACAF posted a solicitation for bids on the Phase I Virtualization project. (Compl., ¶ 62). According to plaintiff, since defendant was a SEWP contract holder, it had access to PACAF's solicitation for bids, whereas plaintiff did not. (Compl., ¶¶ 63-64). Plaintiff alleges that although it inquired, defendant did not inform it of the solicitation for bids on the Phase I PACAF Virtualization project and that up until July 13, 2009, defendant repeatedly and falsely informed it that a solicitation for bids had not been posted by PACAF. (Compl., ¶¶ 65-66). On or about July 13, 2009, plaintiff was informed by another vendor that a solicitation for bids on the Phase I PACAF Virtualization project had been posted. (Compl., ¶ 67). On that afternoon, defendant informed plaintiff of the bid solicitation and that the bid was due the following day, July 14, 2009. (Compl., ¶ 69). According to plaintiff, Jack MacKercher ("MacKercher"), defendant's federal account manager, informed it that he was unaware of the bid posting until he spoke with Nicholas Cerrone ("Cerrone"), plaintiff's representative, on July 13, 2009. (Compl., ¶ 70). Thereafter, defendant requested an extension of time to submit the bid from PACAF. (Compl., ¶ 71).

MacKercher subsequently told plaintiff that defendant's president "had no idea that what [plaintiff] had initially mentioned could have been the same [Phase I PACAF Virtualization] project [that defendant's west coast representative was working on] so he never connected the two;" that defendant's west coast representative had already put together a bid and would be submitting it on July 14, 2009; and that defendant could not team up with plaintiff on the Phase I

5

PACAF Virtualization project because it was "something that someone else at [defendant] [was] already going to win." (Compl., ¶ 72, Ex. A). According to plaintiff, defendant submitted, on its own behalf, a bid for the Phase I PACAF Virtualization project contract "based almost entirely on the confidential proprietary information provided to [defendant] by [plaintiff]" for a total contract price of four million eight hundred sixty thousand eight hundred eighty-five dollars and ninety-three cents ($4,860,885.93), which was accepted by the United States Department of Defense, Department of the Air Force ("Air Force"). (Compl., ¶¶ 74-76, 78). Plaintiff alleges that defendant never informed it that it had submitted the bid, nor that the Air Force had accepted the bid. (Compl., ¶ 77).

On August 21, 2009, defendant entered into a "NCC Server Virtualization" contract with the Air Force. (Compl., Ex. D).

B.    Procedural Background

On April 8, 2010, plaintiff filed a complaint against defendant pursuant to this Court's diversity jurisdiction, 28 U.S.C. § 1332, alleging claims for breach of contract (first through third causes of action), tortious interference with business opportunity/contract (fourth cause of action) and misappropriation of trade secrets (fifth cause of action). Specifically, plaintiff alleges: (1) that defendant knowingly and willfully breached the Non-Disclosure Agreement (first and third causes of action) and Partnership Agreement (second cause of action) by, *inter alia*, using confidential information imparted to it by plaintiff for its own benefit and to the exclusion of plaintiff, (Compl., ¶¶ 80-101); (2) that defendant breached the Partnership Agreement by unfairly competing with plaintiff on the Phase I PACAF Virtualization project bid (fourth cause of

action), (Compl., ¶¶ 102-109); and (3) that defendant used plaintiff's trade secrets in violation of the parties' agreements, (Compl., ¶¶ 110-118). Plaintiff seeks damages in the amount of one million two hundred thousand dollars ($1,200,000.00), injunctive relief and attorney's fees. (Compl., "Wherefore" clause).

On April 17, 2010, plaintiff moved ex parte by way of order to show cause for a preliminary injunction and expedited discovery. By order entered April 19, 2010, a show cause hearing was scheduled for April 27, 2010, a briefing schedule was issued and plaintiff was directed to serve the summons, complaint, order to show cause and all supporting documents on defendant by 5:00 p.m. on April 20, 2010. By letter dated April 22, 2010, defense counsel advised the Court, *inter alia*, that plaintiff had failed to timely serve defendant in accordance with the April 19, 2010 order; that he intended to move to dismiss the complaint for lack of personal jurisdiction; and that the parties had agreed to adjourn the injunction hearing and deadlines until resolution of defendant's motion to dismiss.

Defendant now moves pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss the complaint for lack of personal jurisdiction.


II.     DISCUSSION

    A.     Standard of Review

In order to determine whether there is a basis to exercise personal jurisdiction over a defendant in a diversity case, a district court is required to apply a two (2) part analysis. See Grand River Enter. Six Nations, Ltd., v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). First, the court

7

must look to the law of the forum state, here New York, to determine whether there is jurisdiction over the defendant. See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006) (holding that in diversity cases, the issue of personal jurisdiction is governed by the laws of the forum state, so long as the exercise of jurisdiction comports with the requirement of due process); Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996). Second, a court "must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." Bank Brussels, 171 F.3d at 784.

In opposing a Rule 12(b)(2) motion prior to discovery, "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant * * *. Where a court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." Grand River, 425 F.3d at 165, (quoting Bank Brussels, 171 F.3d at 784) (citations and internal quotation marks omitted) (alteration in original); see also Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010). In order to make a prima facie showing of jurisdiction, the plaintiff need only plead "legally sufficient allegations of jurisdiction." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir 2001) (quoting Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998)).

"Unlike a motion to dismiss pursuant to Rule 12(b)(6), deciding a Rule 12(b)(2) motion necessarily requires resolution of factual matters outside the pleadings." ADP Investor Communication Servs. Inc. v. In House Attorney Servs. Inc., 390 F. Supp. 2d 212, 217 (E.D.N.Y. 2005). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." Whitaker, 261

F.3d at 208 (quoting A.I. Trade Finance, Inc. v. Petra Bank, 989 F. 2d 76, 79-80 (2d Cir. 1993));

see also Southern New England Telephone, 624 F.3d at 138 (accord); In re Magnetic Audiotape

Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (holding that a plaintiff's averments of

jurisdictional facts must be credited as true).

     In order to establish personal jurisdiction over a defendant under New York law, the

plaintiff must demonstrate either that the defendant was "present" and "doing business" in New

York within the meaning of New York Civil Procedure Law and Rules ("N.Y. C.P.L.R.") § 301,

or that the defendant committed acts within the scope of New York's long-arm statute, N.Y.

C.P.L.R. § 302. See Schultz v. Safra Nat. Bank of New York, 377 Fed. Appx. 101, 102 (2d Cir.

May 17, 2010) (summary order).


     B.    N.Y. C.P.L.R. § 301

     Under New York law, an out-of-state defendant is subject to personal jurisdiction if it is

"doing business" in the state. N.Y. C.P.L.R. § 301; see also Wiwa v. Royal Dutch Petroleum

Co., 226 F.3d 88, 95 (2d Cir. 2000). Section 301 "permits a court to exercise jurisdiction * * *

on any cause of action if the defendant is 'engaged in such a continuous and systematic course of

"doing business" here as to warrant a finding of its "presence" in this jurisdiction.'" Landoil

Resources Corp. v. Alexander & Alexander Services, Inc., 918 F.2d 1039, 1043 (2d Cir. 1990)

(citing McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)). A

defendant is "doing business" and is "present" in New York within the meaning of Section 301,

and therefore is subject to personal jurisdiction with respect to any cause of action, related or

unrelated to the New York contacts, if it does business in New York "not occasionally or

casually, but with a fair measure of permanence and continuity." Wiwa, 226 F.3d at 95 (internal quotations and citation omitted); see also Landoil Resources, 918 F.2d at 1043 (holding that in order to establish general personal jurisdiction under section 301, a plaintiff must demonstrate that the defendant engaged in "continuous, permanent, and substantial activity in New York.") Factors to be considered in determining whether personal jurisdiction lies under section 301 include: (1) whether the defendant maintains an office in New York; (2) whether the defendant has any bank accounts or other property within the state; (3) whether the defendant has a telephone listing in the state; (4) whether the defendant does public relations work or solicits business within the state; and (5) whether the defendant has employees or agents located within the state. See Wiwa, 226 F.3d at 98; Landoil Resources, 918 F.2d at 1043.

In his affidavits, Dennis G Sullivan ("Sullivan"), defendant's vice president, avers, *inter alia*, that, at all relevant times, defendant: was a Maryland corporation with a principal place of business in Maryland; had no offices or registered agents in New York[1]; was not registered to do business in New York; derived no substantial revenue from New York customers; did not solicit customers who live in New York, market its services in New York or conduct any other work aimed at attracting or securing New York customers; did not own real property in New York; did not maintain a bank account, mailing address or telephone listing in New York; did not have any individual permanently located in New York in order to promote defendant's business interests here; had only one (1) employee who lived in New York but who "telecommuted" from home,

---

[1] Although defendant's website lists a New York address for defendant, that address is actually the home of defendant's one (1) employee who resides in New York. (Revised and Supplemental Affidavit of Dennis G. Sullivan [Sullivan Supp. Aff.], ¶ 9). Defendant has no property interest in that home. (Id.)

worked on projects throughout the United States, and did not solicit customers or sales opportunities in New York, and whose business activities were not directed at New York; and never visited New York for the purposes of negotiating or executing any agreement with plaintiff. (Sullivan Aff., ¶¶ 1-11; Second Supplemental Affidavit of Dennis G. Sullivan [Second Supp. Aff.], ¶¶ 3-8). In addition, Sullivan avers that although defendant secures some business in New York, it is insubstantial compared with its total annual sales. (Sullivan Aff., ¶ 12). For example, during the years 2005, 2006 and 2009, defendant's New York State annual sales comprised less than one percent (0.0099999 %, 0.0033455 % and 0.0012433 %, respectively) of its total annual sales. (Id.) During the years 2004, 2007 and 2008, defendant made no sales in New York. (Id.)

1. Office, Property and Telephone Listing within State

Contrary to plaintiff's contention, the listing of a New York address on defendant's website does not establish that defendant actually had an office in New York in light of Sullivan's explanation that the address so designated is the home address of its one employee who lives in New York and "telecommutes," and absent any evidence that defendant has any ownership or leasehold interest in the employee's home, pays the employee rent, or otherwise uses the home for its own purposes. See, e.g. Loria & Weinhaus, Inc. v. H.R. Kaminsky & Sons, Inc., 495 F.Supp. 253, 257 (S.D.N.Y. 1980) (finding that the New York address listed on the defendant's stationery did not establish that the company actually had an office in the state since, inter alia, the plaintiff presented no evidence that the defendant was named on the lease, paid rent, or had used or was using the space for its own purposes). Plaintiff proffers no evidence

11

indicating that defendant had an office, property, bank account or telephone listing in New York other than the residence of its one employee who lives in New York.

In any event, even if the employee's home constitutes a local "office" of defendant, "the presence of such an office is not dispositive." Matter of Rationis Enterprises, Inc. of Panama, 261 F.3d 264, 270 (2d Cir. 2001). Since, as set forth below, plaintiff has not demonstrated that defendant engaged in any other "continuous" or "systematic" course of doing business in New York, this one (1) factor is insufficient to confer general personal jurisdiction over defendant.

### 2.     Solicitation of Business

Defendant's relatively insubstantial sales to New York do not amount to the "substantial and continuous" solicitation needed to confer general jurisdiction over defendant. See, e.g. Overseas Media, Inc. v. Skvortsov, 277 Fed. Appx. 92, 95 (2d Cir. May 8, 2008) (finding that the district court properly concluded that the defendant had not engaged in a systematic and continuous course of business in New York sufficient to confer personal jurisdiction under Section 301 where only 0.022% of its total revenue was attributable to New York); Unique Industries, Inc. v. Sui & Sons International Trading Corp., No. 05-CV-2744, 2007 WL 3378256, at * 3 n. 4 (S.D.N.Y. Nov. 9, 2007) ("When less than 5% of a company's revenue attributes to its business in the forum state, general jurisdiction is normally denied."); Copterline Oy v. Sikorsky Aircraft Corp., 649 F.Supp.2d 5, 17 n. 11 (E.D.N.Y. Sept. 10, 2007) ("[S]ales that represent less than five percent of a company's overall revenue are not substantial.")

### 3.     Employees and/or Agents within State

a.    "Agents"

Defendant's website lists various "partners," (Walia Aff., Ex. F; Second Supp. Aff., ¶ 9),

which plaintiff contends are "doing business" in New York and confer general jurisdiction over

defendant.  However, although defendant's website identifies certain companies as "partners," its

actual relationship with those companies is as a purchaser of technological products for the

purpose of reselling those products to its customers.  (Second Supp. Aff., ¶ 10).  Even assuming,

*arguendo*, that those companies were located, or had offices, in New York and that defendant

purchased the products from those New York offices[2], "[t]he mere fact that a defendant

purchases good or services from New York does not mean that it is doing business here."

Arbitron Co. v. E.W. Scripps, Inc., 559 F.Supp. 400, 403 (S.D.N.Y. 1983); see also Realuyo v.

Villa Abrille, No. 01 Civ. 10158, 2003 WL 21537754, at * 4 (S.D.N.Y. July 8, 2003), aff'd, 93

Fed. Appx. 297 (2d Cir. Mar. 29, 2004) (finding that the defendant's relationship with two

businesses that maintained New York offices, pursuant to which it purchased news content from

one of the businesses and paid the other business to distribute the content to third parties,

standing alone, failed to establish general jurisdiction over the defendant under Section 301).

Moreover, although personal jurisdiction may be asserted "over a foreign corporation

when it affiliates itself with a New York representative entity and that New York representative

renders services on behalf of the foreign corporation that go beyond mere solicitation and are

sufficiently important to the foreign entity that the corporation itself would perform equivalent

---

[2] Defendant avers that with respect to one of the companies identified by plaintiff,
Riverbed, it purchases products directly from Riverbed's headquarters in California and does no
business with any office Riverbed may have in New York.  (Second Supp. Aff., ¶¶ 11-13).
However, defendant does not assert similar claims with respect to any of the other companies
identified as "partners" on its website.

services if no agent were available," Wiwa, 226 F.3d at 95, in order to come within that rule, "[t]he agent must be primarily employed by the defendant and not engaged in similar services for other clients." Id. Plaintiff has presented no evidence that the partners listed on defendant's website, (Walia Aff., Ex. F), are primarily employed by defendant and not engaged in similar services for other clients. Indeed, by way of example, one of the partners designated on defendant's website is Microsoft which clearly provides its software services to clients other than defendant. Accordingly, defendant's affiliation with the "partners" designated on its website, some of which presumably maintain New York offices, is insufficient to confer general personal jurisdiction over defendant under Section 301. See, e.g. Ziegler, Ziegler & Associates LLP v. China Digital Media Corp., No. 05 CV 4960, 2010 WL 2835567, at * 4 (S.D.N.Y. July 14, 2010) (finding that the presence of the defendant's agents in New York did not confer personal jurisdiction over the defendant where the plaintiff did not allege that those agents were primarily employed by the defendant and did not perform similar services for various other clients); NewMarkets Partners LLC v. Oppenheim, 638 F.Supp.2d 394, 401-2 (S.D.N.Y. 2009) (finding no personal jurisdiction over the defendant based upon the plaintiff's allegations that it associated itself with New York-based agents absent evidence that those alleged agents acted solely on the defendant's behalf).

> b.     Employee within State

Defendant admits that one of its employees resides in New York, but contends that that employee merely telecommutes to work from his residence and does not specifically direct his business activities to New York. Plaintiff does not allege that defendant's New York-based

employee was involved in any way with the parties' agreements.

Neither party has identified, and the Court has not found, any New York law or case determining the specific issue of whether general jurisdiction under Section 301 may be maintained solely because an out-of-state corporation employs an individual who resides in New York and "telecommutes" from his or her home. However, courts in other jurisdictions have consistently found that the mere presence of an employee within the forum state was insufficient to confer general personal jurisdiction over an out-of-state corporate defendant. See, e.g. Flake v. Schrader-Bridgeport International, Inc., Nos. 3:07-0925, 3:07-0926, 3:07-0927, 2010 WL 1027128, at * 6 (M.D. Tenn. Mar. 18, 2010) (finding that the Court did not have general personal jurisdiction over the defendant foreign corporation merely because it had six officers who resided in the United States absent proof that those officers conducted the corporation's day-to-day business operations from within the forum); Wood v. Kinetic Systems, Inc., No. CV 09-579-S-CWD, 2010 WL 893647, at * 4 (D. Idaho Mar. 9, 2010) (finding that the employment of one (1) Idaho resident was not sufficient "to tip the scales in favor of asserting general jurisdiction" under Idaho law); Ladd v. Research Triangle Institute, No. 05-cv-02122-LTB-OES, 2006 WL 2682239, at * 7 (D. Colo. Sept. 18, 2006) (finding that the defendant's ties with Colorado "f[e]ll far short of the 'continuous and systematic' connections necessary to support general jurisdiction" where, *inter alia*, the defendant's business in Colorado represented less than .1% of its overall national revenue; the defendant had only six (6) employees based in Colorado, all of whom telecommuted; and the defendant had no local office in Colorado, owned no property in Colorado, did not have a registered agent in Colorado, and owned no bank or brokerage accounts in Colorado). I find the reasoning of those courts persuasive and hold that the fact that one of

15

defendant's employees resides in New York and telecommutes from his home, without more, is insufficient to confer general personal jurisdiction over defendant pursuant to Section 301.

Since there is no evidence that defendant had any "continuous and systematic" contact with New York, plaintiff has not made a prima facie showing that defendant was "present" and "doing business" in New York sufficient to confer personal jurisdiction over defendant pursuant to Section 301.

C.    N.Y. C.P.L.R. § 302

Where general jurisdiction is lacking under Section 301, personal jurisdiction may still be acquired over a defendant pursuant to New York's long-arm statute, N.Y. C.P.L.R. § 302. Section 302(a) provides, in pertinent part, as follows:

> "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, * * *, who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state, * * *; or 3. commits a tortious act without the state causing injury to person or property within the state, * * *, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or 4. owns, uses or possesses any real property situated within the state.

"[A] defendant need not be physically present in New York to transact business there within the meaning of the first clause of section 302(a)(1), * * *, as long as he engages in purposeful activities or volitional acts through which he avails himself of the privilege of conducting activities within the . . . State, thus invoking the benefits and protections of its laws, *

16

* *." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 169 (2d Cir. 2010) (internal quotations, alterations and citations omitted). "[S]ection 302 is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Id. at 170 (internal quotations and citations omitted).

Unlike Section 301, which confers personal jurisdiction over an out-of-state defendant for any cause of action, Section 302 requires that the cause of action "arise from" the defendant's contacts with New York, i.e., that the cause of action arose from the defendant's transaction of business within New York, etc. See D.H. Blair, 462 F.3d at 104; Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 764 (2d Cir. 1983); see also Barrett v. Tema Development (1988), Inc., 251 Fed. Appx. 698, 700 (2d Cir. Oct. 24, 2007) ("To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity.")

1.    Transacted Business

"Several factors should be considered in determining whether an out-of-state defendant transacts business in New York, including: (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contact with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the

contract requires [the defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state." Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 22-3 (2d Cir. 2004) (quoting Agency Rent A Car, 98 F.3d at 29). "In determining the strength of the contacts under both section 302(a)(1) and the Due Process Clause, [courts] look to the totality of Defendants' contacts with the forum state." Chloe, 616 F.3d at 164; see also Sunward Electronics, 362 F.3d at 23.

In his affidavit, MacKercher avers, *inter alia*: (1) that in May 2009, Cerrone approached him during a trade show in Virginia Beach, Virginia, and inquired as to whether defendant was a SEWP contractor, (MacKercher Aff., ¶¶ 3-4); (2) that on May 12, 2009, the parties entered into the Non-Disclosure Agreement while still attending the Virginia trade show, (Id. at ¶ 8); (3) that on May 15, 2009, Cerrone e-mailed the Partnership Agreement to him, which he executed in Maryland and returned to Cerrone via e-mail, (Id. at ¶¶ 10-11); (4) that he did not negotiate any of the terms of the Partnership Agreement, (Id. at ¶ 11); (5) that during the period between May 19, 2009 and July 14, 2009, he corresponded with plaintiff via e-mail with respect to the Phase I PACAF Virtualization project opportunity in Hawaii, (Id. at ¶ 12); and (6) that on July 14, 2009, he informed plaintiff via e-mail that defendant would no longer work with plaintiff on the Phase I PACAF Virtualization project because, unbeknownst to him, other representatives of defendant were independently working on the opportunity, (Id. at ¶¶ 13-14).

Defendant's contacts with New York are insufficient to confer personal jurisdiction over defendant pursuant to Section 302. In addition to the previously mentioned considerations set forth in Sullivan's affidavits, MacKercher's affidavit and the allegations in the complaint demonstrate: that plaintiff solicited defendant in Virginia; that the Non-Disclosure Agreement

was executed in Virginia; that defendant executed the Partnership Agreement in Maryland[3]; that

there was no ongoing contractual relationship between the parties, i.e., the parties did not have

any relationship either prior or subsequent to the short-term agreements at issue, see, e.g.

Mortgage Funding Corp. v. Boyer Lake Pointe, LC, 379 F.Supp.2d 282, 287 (E.D.N.Y. 2005)

(finding that one contract did not establish an ongoing contractual relationship); that defendant

never visited New York to negotiate or perform any act with respect to the parties' contracts; that

neither Agreement contains a forum selection clause, although the Non-Disclosure Agreement

contains a New York choice-of-law clause; that the Partnership Agreement does not specifically

require defendant to send notices or payments to New York, or to be supervised by plaintiff in

New York; and that the contract opportunity was to be performed in Hawaii, not New York.

Although "[a] choice of law clause is a significant factor in a personal jurisdiction

analysis because the parties, by so choosing, invoke the benefits and protections of New York

law," Sunward Electronics, 362 F.3d at 23, that factor alone is not dispositive. See, e.g. id.

("Although all factors are relevant, no one factor is dispositive and other factors may be

considered."); CutCo Industries, Inc. v. Naughton, 806 F.2d 361, 366-7 (2d Cir. 1986) (holding

that although "relevant in determining whether a nondomiciliary 'transacted business' for CPLR

302(a)(1) purposes," choice of law provisions standing alone are insufficient to confer

jurisdiction); Berkshire Capital Group, LLC v. Palmet Ventures, LLC, 307 Fed. Appx. 479, 481

(2d Cir. Dec. 16, 2008) (affirming dismissal for lack of personal jurisdiction where besides

---

[3] The state in which plaintiff executed the Partnership Agreement is irrelevant to the
issue of whether defendant transacted business in New York. See, e.g. Sandoval v. Abaco Club
on Winding Bay, 507 F.Supp.2d 312, 317 (S.D.N.Y. 2007) (holding that the fact that the
plaintiff's employer signed the agreement in New York did not subject the defendant to personal
jurisdiction in New York).

agreeing to be bound by New York law, the defendant did not otherwise project itself into New York and the contract was to be performed entirely outside of New York); Posven, C.A. v. Liberty Mutual Ins. Co., 303 F.Supp.2d 391, 399 (S.D.N.Y. 2004) (holding that the fact that the contracts contained New York choice of law clauses did not tip the balance in favor of asserting jurisdiction because although relevant for Section 302(a)(1) purposes, such clauses are not dispositive); Premier Lending Services, Inc. v. J.L.J. Associates, 924 F.Supp. 13, 17 (S.D.N.Y. 1996) ("While it is appropriate to give some weight to choice of law provision, * * *, a choice of law clause alone is not dispositive.")

Moreover, although "physical presence in New York is not a prerequisite for jurisdiction," Berkshire Capital, 307 Fed. Appx. at 481, the limited number of e-mails and telephone calls between defendant and plaintiff are insufficient to confer personal jurisdiction over defendant under Section 302(a)(1) since, *inter alia*, plaintiff initiated the parties' relationship in Virginia and any interaction and communication that defendant had with New York thereafter arises from plaintiff's initial communication, see, e.g. Mortgage Funding, 379 F.Supp.2d at 287; defendant did not otherwise actively project itself into New York; and the "center of gravity" of the agreements was Hawaii.  See, e.g. Berkshire Capital, 307 Fed. Appx. at 481 ("[P]hysical presence in New York is not a prerequisite for jurisdiction so long as the defendant on his or her own initiative projects himself of herself into this state to engage in a sustained and substantial transaction of business." (Internal quotations and citation omitted)); Maranga v. Vira, 386 F.Supp.2d 299, 306 (S.D.N.Y. 2005) ("While * * * a person may be subject to Section 302(a)(1) jurisdiction, though he remains physically outside the State, * * * in order to sustain jurisdiction, there must be some transaction attributable to the one sought to be

held which occurs in New York."); <u>Sandoval</u>, 507 F.Supp.2d at 317, 318-9 (finding that the small number of telephone conversations regarding the contract negotiation were not enough to confer personal jurisdiction); <u>Mortgage Funding</u>, 379 F.Supp.2d at 287 (holding that "[c]ourts seem generally loath to uphold jurisdiction under the 'transaction in New York' prong of CPLR 302(a)(1) if the contract at issue was negotiated solely by mail, telephone, and fax without any New York presence by the defendant" absent evidence that defendants "actively project[ed]" themselves into New York). The mere fact that the defendant engaged in some contact with a New York company does not mean that it transacted business in New York. <u>See, e.g.</u> <u>Berkshire Capital</u>, 307 Fed. Appx. at 481; <u>Sandoval</u>, 507 F.Supp.2d at 316 ("[T]he mere existence of a contract with a New York corporation is not sufficient to constitute the transaction of business under Section 302(a)(1) of the CPLR.") "New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." <u>Maranga</u>, 386 F.Supp.2d at 306 (citing cases). "Rather, communications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself." <u>Id.</u> (internal quotations and citations omitted).

The fact that plaintiff may have expended time, energy and resources in New York in order to fulfill its obligations under the parties' agreements is irrelevant. <u>See, e.g.</u> <u>Mortgage Funding</u>, 379 F.Supp.2d at 288 ("[T]he Plaintiff's business interactions with New York are not at issue when assessing personal jurisdiction. Rather, the Court must evaluate the Defendants' activities and conduct.")

To the extent plaintiff relies on defendant's maintenance of a website to establish

defendant's minimum contacts with New York, (see Affidavit of Vanil Walia [Walia Aff.], Exs.

E and F), it is now well-settled that a website that only "passively" provides information

accessible to any person browsing the internet is insufficient to demonstrate that the website

operator has purposefully availed itself of the privilege of conducting activities within New York.

See Stephan v. Babysport, LLC, 499 F.Supp.2d 279, 287 (E.D.N.Y. 2007); New Angle Pet

Products, Inc. v. MacWillie's Golf Products, Inc., No. 06-cv-1171, 2007 WL 1871345, at * 3

(E.D.N.Y. June 28, 2007) (citing cases). Other than providing contact information, defendant's

website "does little more than make information available to those who are interested" in its

services. Stephan, 499 F.Supp.2d at 288. Accordingly, defendant's "passive" website is

insufficient to confer personal jurisdiction over it.


           2.        Substantial Relationship

       In any event, there is no articulable nexus or substantial relationship between plaintiff's

claims and any actions by defendant in New York. "A cause of action 'arises out of' a

defendant's transaction of business in New York for purposes of Section 302(a)(1) when there

exists an articulable nexus or a substantial relationship between transactions occurring within the

state and the cause of action sued upon." Sunward Electronics, 362 F.3d at 23 (internal

quotations and citation omitted); see also Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d

Cir. 2007). "[T]he nexus requirement * * * merely requires the cause of action to 'relate to'

defendant's minimum contacts with the forum." Chloe, 616 F.3d at 167.

       Defendant is a Maryland corporation with is principal place of business in Maryland; the

contracts giving rise to plaintiff's claims were neither negotiated nor executed by defendant in

22

New York; and the alleged breaches occurred when defendant refused to submit a bid in partnership with plaintiff, and instead submitted a bid on its own behalf by a West Coast representative allegedly based on information provided by plaintiff, for a project in Hawaii. Plaintiff's allegations that it communicated with defendant from New York concerning the contracts and project opportunity are insufficient to establish a substantial nexus between those communications and the cause of action upon which plaintiff sues. See, e.g. Barrett, 251 Fed. Appx. at 700 (affirming dismissal for lack of personal jurisdiction regardless of whether the defendant transacted business in New York on the basis that the plaintiff's claims did not arise out of any New York transaction and the plaintiff's communications with the defendant from New York did not establish a "substantial nexus between the parties' communications and the cause of action sued upon.")

III.    Conclusion

For the reasons stated herein, defendant's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is granted and the complaint is dismissed without prejudice for lack of personal jurisdiction. The Clerk of the Court is directed to close this case.

SO ORDERED.

Sandra J. Feuerstein
United States District Judge

Dated: March 2, 2011
       Central Islip, New York

23